**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**LISA M. JOHNSON**
Westfield, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DEWAYNE PERRY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1302-CR-162 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Lisa F. Borges, Judge
Cause No. 49G04-1109-MR-66257

**September 11, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Defendant Dewayne Perry appeals his convictions for felony murder and Class A felony robbery. The body of Darnell Graves was discovered—bound, gagged, beaten, and stabbed—in the apartment of Perry's friend. Graves's ring, watch, knife, and car had been stolen. Perry argues that Appellee-Plaintiff the State of Indiana presented insufficient evidence to support his felony murder conviction. The evidence shows that Perry was at the apartment complex on the day of Graves's murder, and his DNA and fingerprint were found inside the apartment where Graves's body was found, including on Graves's arm. Additionally, after the murder, the cousin of Perry's girlfriend installed on her vehicle a set of rims exactly matching those that were on Graves's vehicle at the time it was stolen. Moreover, the ex-girlfriend of Perry's brother overheard Perry admit to friends that he lured a man to an apartment; bound his hands and feet; stabbed him; stole his ring, watch, and car; and sold the car's rims. This evidence sufficiently supports Perry's conviction of felony murder. Perry also argues that the trial court violated the prohibition against double jeopardy by entering convictions for both robbery and felony murder with robbery as the underlying felony. The State concedes this claim. Accordingly, we affirm in part, reverse in part, and remand with instructions that the trial court vacate Perry's conviction of and one-day sentence for Class A felony robbery.

**FACTS AND PROCEDURAL HISTORY**

In April of 2011, Graves was hired as a maintenance worker at the Arborstone Apartment Complex ("Arborstone") in Indianapolis. Graves's friend and Arborstone resident Leroy Butler helped Graves obtain the job. Shortly thereafter, Graves and his

girlfriend, Crystal Hopson, moved into an apartment at Arborstone. Graves then helped his friend Patrick Henry obtain a job on the Arborstone maintenance crew.

On May 19, 2011, Henry informed Graves and Hopson that Butler was attempting to recruit people to assist him in robbing Graves. That evening, Hopson noticed a group of people, including Butler and Perry,[1] hanging around outside her and Graves's apartment. Uncomfortable with the situation, the couple discussed moving from Arborstone but ultimately decided to wait. The following morning, Hopson saw Butler, Perry, another man, and two women in a car outside her and Graves's apartment. Hopson and Graves decided to go to a casino for the day. Before leaving, however, Graves told Hopson he needed to turn on the air conditioning unit in another building.

Approximately five minutes after Graves left to activate the air conditioning unit, Hopson looked out the window of her apartment and noticed that Graves's silver Dodge Magnum was in the parking lot. Ten minutes later, Hopson called Graves on his cell phone. Graves did not answer. After another ten minutes went by, Hopson again looked out the window and saw that Graves's vehicle was missing. Graves was found dead in Butler's apartment approximately five hours later.

Police were dispatched to Butler's apartment after an anonymous tipster reported a dead body therein. When police arrived at the apartment and knocked on the door, they received no response. Butler's apartment door had been locked from the inside. An officer was able to enter the apartment through a rear window that had been left completely open. Inside, police found Graves's body, "bound and gagged, beaten and

---

[1] At the time, Hopson did not know Perry. At trial, however, she identified Perry as the man she saw with Butler just prior to Graves's death.

3

stabbed." Tr. p. 213. Graves's hands were zip-tied together behind his back. His feet were also zip-tied. Graves's cause of death was later determined to be a combination of sharp force injury, multiple blunt force injuries, and asphyxia.

Perry's DNA was discovered on Graves's lower arm, multiple cigarettes in the apartment, and a fork in Butler's kitchen. Perry's fingerprint was found on the sill of the rear window in Butler's apartment. A crime scene specialist determined that there had been no forced entry into the apartment. Police also determined that a ring, watch, and knife had been removed from Graves's person. Butler eventually told police where they could find Graves's missing knife, and four days after Graves's murder, Police recovered his missing vehicle. The vehicle's interior had been completely gutted and burned, its wheels had been replaced with temporary tires, and its rims were missing.

On May 21, 2011, Hopson drove past a local auto repair shop and saw a woman, later identified as April Faust, the cousin of Perry's girlfriend, installing a set of rims on a black Dodge Magnum. The rims were an exact match to those that were on Graves's vehicle at the time it was stolen. Hopson notified police, and an officer was dispatched to the repair shop. The officer photographed the rims, but allowed Faust to leave with them on her vehicle. When police later tried to contact Faust, she was very evasive. An eventual investigation of her vehicle revealed that the rims in question had been replaced.

During the case investigation, police contacted Shalena Toliver, the ex-girlfriend of Perry's brother, after learning that she might have information regarding the murder. Toliver informed police that, shortly after Graves's murder, while visiting her niece at Aborstone, Toliver overheard Perry, his brother, and two friends discussing a robbery and

4

murder.  According to Toliver, Perry bragged that he lured a man to an apartment; zip-tied his hands and feet; stabbed him; and stolen his ring, watch, and car.  Toliver also told police that Perry admitted to selling the car's rims to a girl named April and setting the car on fire.

The State charged Perry with Count I, felony murder; and Count II, Class A felony robbery.  The State later charged Perry as a habitual offender.  On December 10 and 11, 2012, Perry was tried by a jury, which found him guilty as charged.  Perry subsequently pled guilty to being a habitual offender.  The trial court sentenced Perry to fifty-five years of incarceration for Count I, which the court enhanced by thirty years because of Perry's habitual offender status.  The court also sentenced Perry to one day of incarceration for Count II, to be served concurrently with his sentence for Count I.

## DISCUSSION AND DECISION

### I.  Sufficiency of the Evidence

Perry argues that the State presented insufficient evidence to support his conviction for felony murder.  When reviewing the sufficiency of evidence to support a conviction, we consider only the evidence and inferences favorable to the verdict. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005).  We do not reweigh the evidence nor do we judge the credibility of the witnesses. *Jenkins v. State*, 726 N.E.2d 268, 270 (Ind. 2000).  If there is sufficient evidence of probative value to support the conclusion that the defendant is guilty beyond a reasonable doubt, then the verdict will not be disturbed. *Wilson v. State*, 770 N.E.2d 799, 800 (Ind. 2002).  A conviction for murder may be based purely on circumstantial evidence, and that evidence need not overcome every reasonable

5

hypothesis of innocence.  *Moore v. State*, 652 N.E.2d 53, 55 (Ind. 1995).

To convict Perry of felony murder, the State was required to prove beyond a reasonable doubt that Perry killed Graves while committing or attempting to commit robbery.  Ind. Code § 35-42-1-1(2).  On appeal, Perry claims that the evidence was insufficient to establish his identity as the perpetrator.  Our review of the record, however, reveals otherwise.

The evidence shows that Perry was at Arborstone on the day Graves was murdered.  Perry's DNA was found in multiple locations inside the apartment where Graves's body was found, including on Graves's lower arm.  Perry's fingerprint was also found on the sill of the apartment's rear window, presumably where the perpetrator exited the apartment.  After Graves was murdered, Faust, Perry's girlfriend's cousin, installed on her vehicle a set of rims exactly matching those that were on Graves's vehicle at the time it was stolen.  Faust was evasive in communicating with police about the rims, and, when police later investigated her vehicle, the rims had been replaced.  Moreover, Toliver overheard Perry brag to several friends that he lured a man to an apartment, zip-tied him, robbed him, and stabbed him with a knife.  Toliver also overheard Perry admit that he took the victim's ring, watch, and car; sold the car's rims to a girl named April; and set the car on fire.  Notably, the use of zip-ties was not widely publicized, and the existence of a missing ring and watch was never made public.  We conclude that the State presented sufficient evidence to support Perry's conviction of felony murder.

Perry makes several contentions on appeal.  Primarily, he claims:  (1) there is significant evidence that Butler killed Graves; (2) Perry's DNA could have been left in

6

Butler's apartment during one of many visits; (3) Perry's DNA could have been coincidentally transferred from the carpet to Graves's arm; and (4) Toliver's rocky relationship with Perry's cousin establishes motive for her to falsely incriminate Perry. These claims, however, are merely an invitation for this court to reweigh the evidence, which we will not do. *Jenkins*, 726 N.E.2d at 270. Therefore, we affirm the trial court's judgment on this issue.

## II. Double Jeopardy

Perry also argues that the trial court violated the prohibition against double jeopardy by entering convictions for both robbery and felony murder with robbery as the underlying felony. Indiana double jeopardy principles prohibit judgment from being entered on both a felony murder conviction and a conviction for the underlying felony. *West v. State*, 755 N.E.2d 173, 186 (Ind. 2001). The State concedes that there is a reasonable possibility that the evidentiary facts used by the jury to establish the essential elements of the robbery charge were also used to establish the elements of the underlying felony for the felony murder charge, and therefore, it does not oppose Perry's double jeopardy claim. Accordingly, we reverse the trial court's judgment on this issue and remand with instructions that the court vacate Perry's conviction and one-day sentence for Class A felony robbery.

The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions.

BAILEY, J., and MAY, J., concur.

7